This has been addressed either by you or your opponent, and that we'll call the first case of the day, and that's Anglin v. Ceres Gulf Justice Jolly, King, Costa, may it please the Court Steve Schechter on behalf of Appellant Martha Anglin I'm going to address two issues in my argument I want to talk about the grievance process, and I want to talk about Title VII And I think we have to remind each other of several things Number one, Lady Justice is blind That does not mean Justice ignores the law and the facts Under the contract of this case, I view it as a very simple matter It's a simple breach of employment contract between Martha Anglin and Ceres Gulf It got a little more complicated because a collective bargain agreement is part of the union and the employers there on the Gulf Coast It became further complicated because WGMA never set up the proper spot grievance committee that's required under the CBA, the collective bargaining agreement And it became further complicated because we have issues related to Title VII Now, on the grievance process, the contract is very clear, black and white, and specific The grievance process requires, first of all, a meeting between a union representative and the employer This was done under Martha Anglin's request to have her union president, Charles Montgomery, go to Ceres Gulf and say, we got a problem Ceres Gulf never responded Well, was it clear that her meeting with them was the first step in a grievance procedure? For one thing, as I understand the current state of play, which might be different from what happened below Everyone is now in agreement that the collective bargaining agreement is what controls the grievance procedure I think I'm right about that, but it's your position, and I think it's also the other side has finally caved and said that's the position too But then the next question is, apparently there was no agreement as to what the grievance procedures were under the collective bargaining agreement And Justice King, you're absolutely correct, and so to determine what the grievance procedure is, we have to look at the collective bargaining agreement And to deal with your first question about whether or not it was clear in the meeting with Anglin and Ceres Gulf There was never a meeting with Ceres and Anglin Gulf regarding her grievance That was between Charles Montgomery and Ceres Gulf, and that's the testimony that came from the injunction hearing That both Charles Montgomery testified they had the meeting, that Nathan Wesley, who's here representing WGMA, was at that meeting And representatives from Ceres Gulf were at that meeting, and all admitted that meeting took place and that they never responded So yes, it was clear that was the first step in the grievance process But no, you're right, no one agrees on what the grievance process is What step two was? And that's exactly right, but the CBA is very clear Step two goes to a spot grievance committee Yeah, but according to the record, there's no spot grievance committee And that was one of the things that made this case very complicated Is because WGMA and the employers and the union never established the spot grievance committee that is required under the CBA So now, my client is kind of left in a quagmire Ceres Gulf never responded to the first step that's clear in the CBA And the next step has never been established So at that point, what do we do? Well, let me ask another question One of the things that your opposing counsel says is that she had filed grievances before And, quote, she knew how to file a grievance, close quote And my question is, what may have happened here Is there may have been a series of informal procedures that were used in what would be a grievance situation That she knew how to use that But that were never formally agreed to I mean, is that a fair, is the record consistent with that? I mean, you have to deal with their allegation that she filed grievances before and she knew how to do it What do you say to that? And what I say to that is let's look at the contract and what the contract provides And the contract is black and white on that issue Under Rule 22 and 946 of the record It says that the parties, even if they exceed or change the terms of this agreement, is not binding And they cannot hold either party to what they've done in the past So whatever Ms. Anglin had done in the past has nothing to do with what happened here But following up on Judge King's question, didn't she go through a full grievance procedure When she was disciplined for using that truck and the union representatives were there It's hard to reconcile the fact that she went through a full grievance procedure for that disciplinary violation But you're saying there is no procedure set up And you're absolutely correct, Judge Costas I mean, what I'm trying to get at is there's a voluntary procedure It was voluntary according to Mr. Wesley It was voluntary according to Mr. Montgomery That the parties could use And that procedure is what she used in the grievance when she got in trouble for using the truck When men had not gotten in trouble for using the truck But it's voluntary And at any point the parties say, you know what, I'm not satisfied with that voluntary procedure Now, if that procedure was required under the collective bargain agreement Then this is the argument I have to make It's futile That process doesn't work And I should be forgiven for using that grievance process But because that process is not in place I'm stuck here arguing the contract Which says the spot grievance committee has to have three to six members from the union And three to six members representing the employer And it makes sense You want a balanced approach when you're dealing with union and employers That's what unions were meant to do Was to balance the strength of the employers But through the years and on this CBA They got away from that But everyone seems to forget Rule 22 specifically states, black and white You can voluntarily do it But it's not binding You're stuck with what you negotiated So why shouldn't my client be able to say Oh yeah, I used the grievance process when I went through the truck I wasn't satisfied with that outcome Because it only represented the employers So next time, I want to make sure we use the process That's dictated in black and white in contract And that's the spot grievance committee That's what this court previously did When we were up here before When it sent it back on the Title VII issues of saying Hey, does this memorandum of understanding Bind Anglin when it's never been approved by the union And the problem was The appellees at that time, defendants Punted that argument Said you know what, we're going to waive that argument We don't need to address it We just need to look at the Title VII But no one has ever looked at the grievance process And what really applies And what really should hold everybody's feet to the fire And so the problem is I've got multiple claims I've got a breach of contract claim Because Ms. Anglin had an employment contract Between Ceres Gulf and herself It is controlled by their employment agreement And the CBA Arbitration or the grievance process Is mandatory under the CBA But the problem is What process? The CBA is very clear The first step Consultation between the union representative And the employer Then, if you're not satisfied with that You go to a step one And step one is a spot grievance committee Involving three to six members of the union What did she do to initiate this step one? She went to a union president When it was determined that she had No longer regular employee status And said Charles, we're initiating the grievance procedure You need to go talk to the employer And Charles Montgomery did in January of 2010 On your Title VII claims On the retaliation Moving to a different area I had a hard time creating a timeline For retaliation, you typically need to show She filed this complaint And then X number of days or months later She was retaliated against Is there anything in the record you can point us to To show when she made this complaint About the text message When she made these other complaints That are the basis for your claims? Absolutely, but it may not be Week three of month four That you may be looking for Or this happened on August 10th of 2009 In the record, it deals with A period of about a year In the fall of 2008 That's when she was identified As a Title VII witness And it was shortly after she was identified As a Title VII witness I can't tell you that it was a month I can't tell you it was a week All I can tell you is shortly after that That she was demoted And one of the WGMA supervisors I believe it was one of the supervisors Stood up and announced publicly What was Martha Anglin thinking? We're going to go after her And that's part of the problem I don't have this date, this date I've got fall of 2008 It's in the record April of 2009 Doesn't that matter, though? I mean, the fact that you don't have the date Hurts you instead of helping you, doesn't it? Your Honor, would I prefer Having a specific date? Absolutely, but the problem is And that's why I'm saying This is a simple contract case You have to look at it in the background That Martha Anglin had An ironclad employment contract That's never been denied That contract can be canceled Or breached, I shouldn't say breached I should say canceled For two reasons and only two reasons One, for cause Or two, because of reduction in force Neither one of those things happened She had an employment contract? She had an employment contract With Ceres Gulf To be a regular employee And what that means is She's guaranteed a minimum of 40 hours Is this a contract she signed And they signed? It's pursuant to the collective bargain agreement Which keeps bringing us back into the CBA Under the CBA Union members Can become regular employees Of some of the longshore Companies out there The way they do that is they apply They get accepted And once they're accepted They're guaranteed a minimum of 40 hours They're guaranteed holiday Is that under the collective bargaining agreement Or pursuant to an individual contract Between the employer and the employee? It's through the CBA There's not another document That all parties signed that said This is our employment contract It's through the CBA And through the CBA What do you mean under the CBA as it exists? Is this longshore? Yes, it's ILA 1351 I believe That's her union Longshore The CBA Does that mean that they can't be fired For any cause at all? They can be fired for cause Or they can be fired Because there's a reduction in force A decrease in the number of people She doesn't have a contract with the employer I'm sorry? It's what you've told me She doesn't have a contract with an employer She's like any other employee that's working That is covered by a collective bargaining agreement Is that right? That is incorrect All the union members are covered under the CBA Certain members of the union Get an elite status As a regular employee And they get extra protection That that employer says I'm guaranteeing you 40 hours A minimum of 40 hours And that's not disputed Everyone agrees she was a regular employee Entitled to those protections Where the dispute came in Under that breach of contract Had to do with the fact that they claimed That there's not work for her And they couldn't guarantee her the 40 hours anymore But that's not the case In the injunction here And that was held in August of 2010 The testimony from Charles Montgomery Going over the employment records Clearly indicated there was sufficient work To work her at least 40 hours Because she's supposed to have a preferred status Under her employment contract And that's why you have to Analyze the Title VII You're absolutely correct I want dates I'd love to have August 7, 2010 this happen But we have to analyze it In the viewpoint that she had An employment contract And the only reason they said We're not honoring this employment contract She didn't have As I understand what you've said She doesn't have an employment contract She has a The union has a contract With the employer And she is a member of that union Covered under that Entitled all of the rights that contract brings That the union negotiated Between it and the employer And once she becomes a regular employee She gets added protection under the CBA Under the CBA As a regular employee And everyone refers to that as the employment contract So I'm looking at two contracts Her employment agreement As a regular employee That's not written And the CBA And the key to her Title VII Is when you violate that breach of When you breach that employment agreement But now she She is suing In her individual capacity The employer, is that correct? That is correct And because She's suing the Individual employer Because he Or it did not follow The union contract That is So she is a third party beneficiary of the contract In effect And again, if in effect And I know my time is up I just have a couple minutes to finish up these  No, I just I want to address your question, Your Honor That's it Is that what we look at Is under the CBA She is protected As an Under an employment agreement It's her rights that were violated If they had raised the argument Thank you very much Thank you, Mr. Schechter Mr. Weasley We'll hear from you Mr. Court My name is Nathan Weasley I represent the West Gulf Maritime Association And I am speaking today on behalf of Both of the appellants West Gulf Maritime Association And Ceres Gulf What we have here Is a multi-employer collective bargaining agreement The West Gulf Maritime Association Negotiates those agreements On behalf of their members Including Ceres Gulf Ceres Gulf is the employer The West Gulf Maritime Association Has actually never been the employer Of the appellant I Disagree with many things Obviously that Mr. Schechter Has said but I want to be very clear about How the collective bargaining agreement works And that is Generally speaking You do not have to have anything written down To be a collective bargaining agreement Often they are Collective bargaining agreements change over time In this particular case They are required to be reduced to writing If the party demands it They are required to be reduced to writing You are exactly right The NLRA The National Labor Relations Act Does require that they are reduced to writing If one of the sides Asks that it be reduced to writing You are correct But in general There are many ways that a collective bargaining agreement can be changed Obviously one of them is past practice In this case the record is clear that For 20 years they have operated under a certain Practice in terms of how they ran their Grievances And in fact as you noted Those grievances The plaintiff was involved in those Grievances. She was involved in more than one She was involved with the one Where she was disciplined For driving a truck while she was not on the payroll She was also involved in a second one That is really central to her title 7 Claim and that was she accused A worker Mr. Walcott of harassing her Mr. Walcott was suspended So Mr. Walcott Asked for a step 1 And he received a step 1 and in that step 1 The evidence was very clear That what had happened is He had been issued a cell phone by the company He Was only using it for work She, the plaintiff had gone through The cell phone, found a text message That was inappropriate And then claimed that he was harassing her So when he came to the step 1 He was vindicated because he did Nothing to show her that text To send her that text He didn't even give her the phone She had literally picked up the phone And gone through those texts on her own That is the crux of her harassment case Right there And the trial court correctly found That that does not rise to the level Of harassment In the gender case It seems like the gender case Has more substance to it I mean if the briefs are correct I mean she was I guess it's a retaliation In gender's overlap Or the same thing But she was She did lose a job right Or was demoted Well let me just put it this way And then you can straighten me out That she was demoted from the job That she had and two men Effectively replaced her The record is certainly not clear on that At all There were other men who were regulars That is true At the same time she was a regular And at the time what the record is clear on Is she was actually The demotion is separate That happened back in 2009 The alleged demotion At some point then she was There was a whole series of meetings About whether or not she should be allowed to work On a reduced schedule And in fact she was given preferential treatment Because she said I can't work outside And they said fine Some of the jobs you can work inside And so we will leave you as a regular Even though we're not going to guarantee you 40 hours a week Which is over and above That sounds like you're headed right into a factual dispute To me Well Because that's certainly not what she says I mean exactly She says it's a factual dispute It seems like she's created a factual dispute Because there is some hostility about her testimony And some statements That have apparently been made To that effect And so on The thing that just kind of gripes me About cases Not anything about you, nothing personal But is they go on and on and on And here's a woman That's supposed to You know wants a little damn relief And what do the courts do? We remand it And we kick the can down the road And it comes back here And the lawyers get involved And here's this employee out here That is being strangled By the judicial system Including the lawyers And including the judges And I just kick this thing back And get it over with Your honor Your honor I think You have a balancing act when you have a union I understand that Tell me why Let me just state very quickly That if you look at the situation Where she was disciplined For driving that truck She got the step one In two weeks I could not agree with you more Your honor that judicial resources Have been eaten up in this On a technicality I mean Of course the law is still Technicalities To back up a second If you go back Into 2004 The parties agreed That discrimination claims Would be covered under their collective bargaining agreement That's what the whole first appeal Was about The supreme court Endorsed that But whether The question in the first appeal Was that in fact In place Your honor we said look Let's waive that argument so you can get to the merits And the trial court did get to the merits And ruled on the merits In exquisite detail And there's a 40 page opinion That goes through all of her Allegations and explains why those are not Sufficient In a summary judgment setting But on the retaliation Claim doesn't she have a statement That other employees Weisskopf told her that another employee Had said management wanted her gone Because of her complaints I mean we have to take that as true But why doesn't that create a fact issue And retaliatory motive I know you're saying maybe there's no adverse action There's other problems with her Well there are certainly others But one employee saying that to another Who's not a decision maker Who is simply A fellow employee Is A hearsay A stray remark There's a lot of laws By the party opponent By the agent Assuming it's admissible Assuming it's admissible You're still talking about a fellow employee As opposed to a supervisor Or as opposed to a decision maker And so if you get into the whole stray remark You're saying that management Wanted her gone But he wasn't The point is he wasn't a manager Is the point He was just another fellow employee Another union worker But saying That management wanted her gone That's what he had heard at the company If a supervisor at the company Had said I want you gone because you filed this complaint Absolutely But that's not what we have Your position is that if an employee Says oh my gosh you know this company I mean everything I hear we're firing people Who are black Every day That doesn't create a fact issue of discrimination Or we're firing them because they're a woman I mean only a statement by management Matters Well in terms of remarks I would say Yes absolutely In terms of liability yes In terms of evidence no I mean it is relevant Evidence But you can't hold an employee alive Yeah I think there's actually a whole body of law On stray remarks on when that would rise To a level of I just think if you have an employee Saying I've heard our company's discriminating Against these people or retaliating against these people I mean Right the decision has to be made by management But it's evidence of whether it was Discriminatory I don't see how that's not Relevant Well I would say that there That it would not be evidence of it Because how would that person be in a position to know And I think that's really the crux of those cases Sometime address this question About her employment contract And whether she was fired and whatever Whether she was let go When she shouldn't have been And the question about grievances Because I am confused about that As I said to your opposing counsel I had understood First that everybody is now currently in agreement That the collective bargaining agreement Is the source of whatever rights there are And obligations with respect to Grievances And that there doesn't seem to be Any kind of Formal Grievance procedure Your honor I would certainly disagree that there's Not a formal procedure And in fact it was set forth in writing It's Actually in the record at 959 I believe it's also in the record at 9452 And that actually has been In the record would reflect that's been in place For something like 20 years You know if there's any question about it Well what does it say What is it for one thing Well what does it say What is it you say it's in the record at that But what is it is it a written Document that spells out what the grievance procedures are Yes Absolutely And it does exactly that And actually I think really the only There's a couple of issues that the Plaintiff may have with the grievance Procedure and one is that It says a worker must make a request For a step one hearing through their ILA Local And the record is clear that that was not done In other words there was a request For a step she alleges That she made a request to Directly to series But with respect to was there a request For a step one from the ILA local The record is clear that there was not That the ILA local Charles Montgomery did not request A step one And these things happen all the time She is an employee Covered under a union contract And has no particular Specific contract of any kind with the employer The only contract involved here Is the one between the employer and the union Is that right There is only yes Okay and so If she has no rights Except under the collective bargaining Agreement and the collective Bargaining agreement can be enforced only by The union that's correct And so she cannot enforce Her rights under the collective bargaining Agreement except I think there's maybe one Two exceptions bad faith Representation and that sort of thing And in fact to the Supreme Court And back of these types laid that all out Basically even if you felt with representation Then maybe that's a different case but that's not Alleged here I mean here So here she has no right To assert she has no right Whatsoever To assert Her claim against the Employer because there is No agreement between her And the employer and it's Covered under the National relations act Which is between the union And her and if the union for example Decides not to I mean that's the End of it That's the end of it That's exactly what happened in the back of these types Where the union said I do not Want to we don't feel your case Is meritorious I'm not going to take it to arbitration So the types went and sued In state court got a judgment Supreme court vacated that judgment and said You have to live with what the union Did union is your bargaining Representative once you vote the union in You give up all of your rights With respect to the employer and the employment Relationship to the union who enforces Those rights under the collective bargaining agreement That they've negotiated That's that's exactly right I think you had a Well has All coming as news to me and I thought I had Read these briefs with some care But so Your your position is that there is A formal grievance procedure and that one Sheet of paper that you held up This is the procedure that they've been That is the procedure that they have been using For I mean the record Would reflect something like 20 years And that the union has to Initiate a grievance on her behalf And failing that She's just out of luck That is correct She would have the ability to bring a claim For failure to represent but Against the union yes You would have the obligation to Evaluate whether or not she had a meritorious Claim because obviously you may have people Who want to file grievances all the time and the Union needs to sort out which ones it's worth It's time to go prosecute and which ones Are not for example they obviously Did say hey I'm going to represent Her with respect to the Truck driving the truck when She was off duty or when she Was not on the payroll they did prosecute That I mean they took that to a step one And the that result Of the step one is in the Record and all of this is In it let's talk about the agenda The agenda Discrimination Tell me that's that's one That looked had more Quality to it than The rest of them Let me let me say a couple of things one is Let's Go way back to the beginning when She when he said oh there was a complaint Or that she was identified In a complaint she was Never identified what complaint that was What that other company was what the company Was how series would even know about It this is a multi-employer collective bargaining Agreement there's multiple employers It's unclear that I had anything whatsoever To do a series at all That she was allegedly identified The complaint isn't identifying we have No idea we're talking about now we're talking about Harassment what are you talking about Now yes okay I was Going back to the beginning back He said the first thing that happened is she was Identified in a In a What about she claims she was demoted Which is the gender discrimination Claim so let me Let's kind of back up on that Item seven claim which she has every right To bring I agree Individually does because we have Waves the MOU defense so She absolutely does you're exactly right So I would say a couple Of things one is is that look when She says she was demoted then But the record reflects that What was happening is that she was Saying wait a minute I have this disability On this medical condition And there was an Exchange the record Is full of the exchange Of all the things that happened between And actually you know She had an attorney it went through A whole dialogue how can we accommodate You so And then and so how she Was accommodated she was actually given preferential Treatment because in the contract I actually remember You're getting back to your point I'll get there in the contract Basically it says hey if you're going to be a regular employee You have to work 40 hours and they said Well we don't have 40 hours of work But we'll leave you in that status If that's what you would like and That's over and above what Normally would be required in the contract So they basically series Go and in Conjunction with the ILA agreed to Give her preferential Status and so Somehow or another that's being discriminatory Doesn't really make any sense If you get down to it It's very difficult It's certainly not impossible but if you look at How you Apply a collective bargaining agreement Generally you're driven by Things like a couple of things Typically seniority Maybe you're driven also by What training did that person have Or what experience did that person have for the job And so at the end of the day You say well I want to treat this person Differently than that person I mean that's really subject to the collective bargaining agreement Where you say well wait a minute Anybody could then grieve that and say Hey you didn't follow seniority Or you didn't actually look at qualifications Which is what you would have to do into the collective bargaining agreement So it's very difficult To say oh somehow or another She was being mistreated when the record reflects That she was actually being preferential treated You're talking about a collective bargaining agreement on one hand And title 7 on the other Which is a completely different analysis I mean they have nothing to do with each other And she can, I don't care what Is permitted under the collective bargaining agreement She can say that that is Gender discrimination and file a title And she can't go into the collective bargaining agreement maybe But she can go into title 7 Notwithstanding the fact that it may suit the Collective bargaining agreement  Talking about now Is the gender discrimination in which She seems to allege That there are various facts that would get to a jury That she was discriminated against Because two males replaced her After she engaged in Protective activity I think that's Testifying in a case Yeah I think that's over Okay well tell me I don't think that there's evidence That she actually was replaced by males Have anything to do with any sort of complaint I mean if her complaint Well I know that you're I mean I'm totally I mean I totally expected you To say that But that's not what she says Well But you can't just simply make a Conclusory allegation oh this had to be Because of my gender I mean the Fifth circuit has been very clear on that Y'all have been very clear on that you can't simply say Oh it had to be because of this And I think that's all she has And I think that's what the trial court found It needs to be resolved one way or another I mean and getting back to Well is there a separate contract The answer is no and I would Disagree with this characterization of what a regular Employee is in terms of this You know these special Protections there's no It's just a simply a different designation Of this under the collective bargaining agreement It's not a separate contract It doesn't There's nothing magical about it That this somehow or another implies That she would get some sort of special treatment All it is is a separate position That a worker could get Could be assigned to Under the collective bargaining agreement You know I have to say Your brief here Is not explicit The way in which you've been explicit today About the fact that It was really up to the union To bring this claim on her behalf That's really not in here That's why I didn't get it I'm sorry I guess I should have been more careful But you weren't exactly I was going to say You were not pellucid on this point I hope it's in the record Somewhere What you're saying Well maybe in the law But you know the question was whether The district court even knew what Field it was playing on I sort of missed the field myself The question is Did the district court miss the field And what's your responsibility for that Maybe you got some I think the district court got it exactly right And I think I understood it very very well Okay Mr. Wessler We appreciate your argument Thank you Mr. Schechter We look to hear from you for rebuttal If I may And you're absolutely right Justice King That was not raised in the district court That it was the union's responsibility To enforce the CBA If it had been raised We would be in a very different situation Because we would be arguing It would have been futile Because the union and WGMA Failed to establish The spot grievance committee That was required That's the Russ B. Runyon opinion I agree with you Judge That it is up to the union To enforce the CBA Unless they fail to do so If they fail to do so If it is futile to use the union Then the individual employee Is allowed to proceed on their own No I respectfully disagree Under the Russ B. Runyon opinion Is that if I'm sorry The only way is if they charge That the union is representing them In bad faith Then they sue the union For bad faith representation And then the union looks over To see whether they want to press it or not And if they decide Well I will file agreements for her They'll go on and do it After they've been sued by her And your honor I apologize for skipping those steps But in the previous And when this case was filed It was amended to include a bad faith Claim against the union For these allegations The district court had dismissed that And we brought that up in the previous appeal And it's never been addressed I skipped that step and I apologize You're right The case went back with a very Specific mandate as to what to do So in a sense it was addressed And it just isn't alive anymore Is only the title 7 To be addressed in remand What was the remand about? The remand was to determine Whether the memorandum of understanding Which is what Mr. Wesley referred to As the specific grievance procedure Was binding on England When it was never approved By the union membership That was the remand It wasn't limited to the contract To the CBA It wasn't limited to title 7 It was to determine whether or not The MOU was binding They punted The MOU argument on title 7 And the court ignored The argument under The breach of contract That there is She had standing The court said she didn't have standing Because she didn't exhaust administrative remedies That's the only thing That's been argued all along And my argument Until I'm blue in the face Is she's the only one who has followed The grievance procedure under the CBA The union is not a defendant in this case Is that correct? Not at this time They were previously And that was the subject Of the previous appeal And whether or not the case is dead Is a question of when this case actually ends Why don't you address this business Of gender discrimination And tell me 1, 2, 3 How you have a case of gender discrimination Okay Number one You had two male employees One with less experience and less seniority And the other with less experience That they did not demote And they demoted her That's gender That's Wilcott and Oliphant It's in the record Number two Is they retaliated against her And put her out in the heat and sun They caused her medical problems And then they failed to give her breaks That's when she requested breaks That is retaliation Well it's both Because the men got breaks That's gender And it's retaliation because She was complaining I don't have just one edge of the sword I have both edges of the sword there Okay The second or the third Gender discrimination Has to do when she was fired In January of 2010 Okay When they kept the two male employees She was demoted These three Oliphant, Wilcott and Anglin are regular employees They get preference That's why when she was demoted If there was a problem with the work That's the first gender discrimination That we've talked about The next gender discrimination is when They didn't put her to work Over all the other workers When she should have been given preference That's the three Major gender discriminations With the termination And you have to analyze the Title 7 In light of the fact that they Had a contract that Limited their ability to change Her hours without cause Or without a reduction in force And I ask you I agree with Justice Jolly It's time for her to have her day in court You cannot be blind To the law and facts If you're blind to the law of contracts And we can't be blind to time So thank you very much I thank you all and you all have a Merry Christmas Okay we call the next case of the day And that's Stephen F. Hotze